**STATE of Minnesota, Respondent,**

v.

**Raymond David IRWIN, et al, Appellants.**

**No. C7–85–1066.**

Court of Appeals of Minnesota.

Dec. 10, 1985.

Review Denied Jan. 23, 1986.

**112**

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka Co., Atty., Barbara J. Harrington, Asst. Co. Atty., Anoka, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellants.

Considered and decided by LESLIE, P.J., WOZNIAK, J., and NIERENGARTEN, J., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant Raymond David Irwin was convicted of two counts of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(c), § 609.342(d) (1984), burglary in the first degree, § 609.582, subd. 1(a) (1984), and assault in the second degree, Minn.Stat. § 609.222 (1984). He claims that (1) the trial court improperly excluded alibi testimony as a sanction for failure to provide written notice of the alibi defense, (2) his trial counsel was ineffective, (3) the prosecutor committed prosecutorial misconduct in closing argument, (4) the evidence was insufficient to sustain his convictions, and (5) the trial court unfairly manipulated the sentencing guidelines by using the *Her-*

*nandez* method of sentencing in conjunction with a durational departure. We affirm.

## FACTS

Appellant's convictions arose out of an allegation by 14-year old H.J.T. that she was raped the night of September 23, 1984. H.J.T. was home alone that night. She locked the apartment doors and left the lights on in the kitchen, bathroom and her bedroom. She fell asleep around 11:30 p.m. She was awakened in bed by a man on top of her trying to pull her panties down. The lights in the apartment were out but she could tell her assailant was chubby, of average height, had stubby facial hair and smelled of cologne and liquor.

As H.J.T. struggled, her screams were muffled by the man's hand over her mouth. He pressed a cold, sharp object which felt like a knife against her throat, and told her to shut up because "I don't want to hurt you." The man pulled up her t-shirt and bra, touched her breasts, kissed her and engaged in sexual intercourse with her. He started to cry and asked her to hug him. He then told her to lay there for five minutes and "call the cops or whatever you want."

H.J.T. noticed the light bulb in her bedroom fixture had been unscrewed and that the front and back doors to the apartment were open. She also discovered the bathroom light fixture had been unscrewed. H.J.T. called Mary Marth, the owner of the building who lived downstairs. H.J.T., who was visibly shaken and crying, reported what happened to Marth who called the police.

Marth testified that she had known appellant for several months, and that he was at the apartment building that night rapping on the window of her son's bedroom. She saw appellant knocking at the back door of their apartment around 11:50 p.m. Marth indicated that appellant went to a parked car and then returned to the apart-

ment. He entered the front of the building and went up to the second floor. While Marth and her son were looking for appellant, they noticed lights which previously had been on in the first and second floor hallways were now off. Marth's son testified he saw appellant return to the car with a screwdriver protruding from his back pocket.

Marth testified that at about 12:35 she telephoned Mary Jo Behl because Behl was the owner of the car appellant was driving that night. Marth told her appellant had been hanging around for a half hour. She threatened to call the police. Behl told Marth appellant arrived at her · house. Shortly after that Marth received the call from H.J.T.

The police were called at 12:50 a.m. and arrived immediately. A description of the assailant was given and the police observed that no forced entry was made. H.J.T. described how the doors could easily be opened by using a long slender object to move the bolt. The kitchen light also was found to have been unscrewed. H.J.T. was taken to a hospital for a sexual assault exam. B.C.A. analysis did not eliminate appellant as a possible source of seminal fluid found in H.J.T.'s vagina. Appellant's fingerprints were found on light bulbs from the kitchen and bathroom.

After appellant's arrest, he stated to investigators that he was at the apartment at 11 p.m. and had knocked on the doors to Marth's apartment. He admitted he went to his car and returned, but claimed he sat on the front steps of the building for half an hour. Appellant was 5'8½" tall and weighed 197 pounds at the time of his arrest.

The State presented *Spreigl* evidence to bolster its case on identification because H.J.T. was unable to identify her attacker. This evidence showed that two months before appellant had been at a party for some teenagers. After the guests had left, 15-year old T.M.B. was alone with appellant watching television. T.M.B. fell asleep and was awakened by appellant's hand touch-

ing her breast. T.M.B. told appellant to leave and appellant told her he loved her and wanted to make love to her.

At trial defense counsel failed to file a proper notice of alibi defense. Appellant wanted to present testimony of appellant's friends Mary Jo Behl and her son Jeffrey that appellant was with Jeffrey from 12:15 to 12:30 a.m. that night and that Mary Marth's phone call had been made at 11:40 to 11:45 p.m., at which time appellant arrived at Behl's home. The trial court excluded the testimony. During trial when the issue came up again, appellant petitioned this court for a writ of prohibition and we denied the petition.

Appellant was convicted of two counts of criminal sexual conduct in the second degree, one count of burglary in the first degree and one count of assault in the second degree. He was sentenced on the burglary offense to 30 months imprisonment, and on one count of the sexual offense to 152 months, concurrent.

## ISSUES

1. Did the trial court abuse its discretion in excluding appellant's alibi testimony as a sanction for failure to provide written notice of alibi defense?

2. Was appellant denied effective assistance of counsel?

3. Did the prosecutor commit prosecutorial misconduct in closing argument?

4. Was the evidence sufficient to sustain appellant's convictions?

5. Did the trial court unfairly manipulate the sentencing guidelines by using *Hernandez* method of sentencing in conjunction with the durational departure?

## ANALYSIS

### I.

When this case first came for trial, and after 10 jurors had been selected, the State moved *in limine* to preclude appellant from calling alibi witnesses because appellant had not provided written notice as

required by Rule 9.02, subd. 1(3) of the Minnesota Rules of Criminal Procedure. The trial court continued the trial for one month to allow for proper discovery. A month later defense counsel still had not provided written notice. The trial court ruled that the testimony would be excluded pursuant to Rule 9.03, subd. 8 of the Minnesota Rules of Criminal Procedure, and *State v. Lindsey*, 284 N.W.2d 368, 372 (Minn.1979). Appellant claims exclusion of the alibi testimony was reversible error.

The trial court, in its discretion, may preclude testimony as a sanction for failing to comply with the discovery rules. *Id. see State v. Vaughn*, 361 N.W.2d 54, 58 (Minn. 1985). In *Lindsey* the court stated:

> The imposition of sanctions for violations of discovery rules and orders is a matter particularly suited to the judgment and discretion of the trial court. [Citations omitted.] Indeed, the trial court is in the best position to determine whether any harm has resulted from the particular violation and the extent to which this harm can be eliminated or otherwise alleviated. [Citations omitted.] Accordingly, we will not overturn its ruling absent a clear abuse of discretion. [Citations omitted.] In exercising this discretion the trial judge should take into account: (1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors. [Citations omitted.]
>
>    *    *    *    *    *    *
>
> Preclusion of evidence is a severe sanction which should not be lightly invoked. [Citations omitted.] Here, however, preclusion was warranted and consequently we hold that the trial court did not abuse its discretion. The values sought to be achieved through reciprocal discovery will be attained only if the rules are properly observed, and to this end the trial courts must have the ability to make those obligations meaningful.

*Lindsey*, 284 N.W.2d at 373–74.

Here the trial court specifically followed the *Lindsey* factors indicating that it could find no justifiable reason why disclosure was not made, that the extent of prejudice to the prosecution was exactly the same as in the *Lindsey* case, that the feasibility of rectifying the prejudice by continuance was not practical since the case was now substantially into the trial and there had already been a one month continuance granted, and that the court could find no other factor to bear on the situation. We cannot say that the trial court abused its discretion. Appellant's challenge to the preclusion sanction on constitutional grounds is unavailing. In *United States v. Nobles*, 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975), the United States Supreme Court held that the Sixth Amendment does not bestow upon a criminal defendant the right to present unlimited evidence at trial, free of restrictions of rules of discovery. *See Lindsey*, 284 N.W.2d at 373.

## II.

Appellant asserts he was denied effective assistance of counsel. A direct appeal is not the most appropriate method of raising this issue; a petition for post-conviction relief should be brought. *State v. Hanson*, 366 N.W.2d 377, 379 (Minn.Ct. App.1985).

On this record appellant cannot prevail. Appellant must demonstrate trial counsel was not reasonably effective and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). *See State v. Eling*, 355 N.W.2d 286 (Minn.1984). Defense counsel's error in failing to file a proper alibi notice is not grounds for a new trial because the record contains overwhelming evidence of appellant's guilt. There is no reasonable probability that appellant would have been acquitted based on the testimony of his friends who were prepared to ac-

count for appellant's whereabouts for only some part of the night of the assault.

### III.

■ Appellant claims the prosecutor committed reversible misconduct in closing argument by stating "Well, defense has called witnesses here, defense has the same opportunity to subpoeana witnesses and bring in people and adduce testimony and evidence as does the State." No objection was made. The prosecutor's comment was error because it is a comment on appellant's failure to call witnesses, *State v. Walker*, 372 N.W.2d 743, 746 (Minn.Ct.App. 1985). However, in light of the lack of objection, the strong evidence of guilt, the brevity of the statement and the unlikelihood that it was so serious to have played a substantial role in influencing the jury, the error was not unduly prejudicial. *State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974).

### IV.

■ Appellant's contention that the evidence was insufficient to sustain his convictions is without merit. Appellant, by his own admission, was at the scene. Appellant was seen leaving from the apartment with a screwdriver protruding from his back pocket. Appellant's physical characteristics closely matched the victim's description. Appellant's fingerprints were found on light bulbs in the victim's apartment. BCA tests did not eliminate appellant as the possible source of semen found in the victim. *Spreigl* evidence showed two months earlier appellant had non-consensual sexual contact with a 15-year old girl involving his fondling of the girl's breasts while she was sleeping. Thus, the record contains overwhelming support for the jury's verdict.

### V.

■ Appellant was sentenced to 30 months for burglary and 152 months for criminal sexual conduct, concurrent. The trial court used the *Hernandez* method in generating criminal history scores, *State v.*

*Hernandez*, 311 N.W.2d 478 (Minn.1981), and doubled the presumptive sentence for criminal sexual conduct. Appellant asserts that use of *Hernandez* in conjunction with the durational departure constitutes an unfair manipulation of the guidelines even when the sentences are run concurrently.

Appellant's argument is without support. Reliance on *State v. Moore*, 340 N.W.2d 671, 673 (Minn.1983) is misplaced because the court there cautioned against using *Hernandez* with consecutive sentencing. Further in *State v. Loitz*, 366 N.W.2d 744 (Minn.Ct.App.1985) *pet. for rev. denied* (Minn. July 17, 1985) we upheld the trial court's use of *Hernandez* in conjunction with a durational departure.

We note that appellant seeks a reduction in sentence to 76 months, the presumptive sentence for a severity level VIII offense and a criminal history score of 3. Even without using *Hernandez*, the trial court could have sentenced appellant to 140 months, double the maximum presumptive sentence based on a criminal history score of 2.

### VI.

■ In a supplemental pro se brief, appellant makes numerous allegations in support of his contentions regarding ineffective counsel, insufficient evidence and trial errors. Most of these charges, consisting of information outside the record, deal with trial tactics (failure to conduct cross-examination in a certain manner and failure to investigate certain witnesses) and do not demonstrate ineffective counsel. Appellant's allegations of prosecutorial misconduct regarding the prosecutor's gesture of placing a pen to his throat in describing the assault was similarly outside the record and not a ground for a new trial in any event. Other alleged errors cited by appellant are not sufficiently prejudicial to justify a new trial.

### DECISION

The trial court did not abuse its discretion in excluding alibi testimony. Appel-

lant was not denied effective assistance of counsel, and prosecutor did not commit reversible prosecutorial misconduct in closing argument. The evidence was sufficient to sustain appellant's convictions for criminal sexual conduct, burglary and assault, and the sentencing court did not unfairly manipulate the guidelines by using *Hernandez* method of sentencing in conjunction with a durational departure.

Affirmed.