**In the Matter of Louis MARTIN.**

**No. C2–90–924.**

Court of Appeals of Minnesota.

Aug. 7, 1990.

Terry L. Hegna, St. Paul, for appellant Martin.

Thomas L. Johnson, Hennepin County Atty., Elizabeth V. Cutter, Asst. County Atty., Minneapolis, for respondent petitioner.

Considered and decided by WOZNIAK, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

A hearing was held to determine whether to commit appellant Louis Martin as mentally ill. A medical records custodian testified by telephone to provide foundation for the admission of appellant's medical records. The trial court committed appellant as mentally ill. Martin appeals, contending that the trial court abused its discretion in admitting the medical records and that the error was prejudicial. We affirm.

## FACTS

A hearing was held on the petition to commit appellant as mentally ill. Respondent first sought to lay foundation for the admission of a certified copy of appellant's medical records. Over objections from appellant, two witnesses were contacted by telephone, and their testimony was amplified into the courtroom.

Mary Coenen, appellant's psychiatric social worker, testified by telephone that she was familiar with his records. She did not see the records when they were copied and had no personal knowledge of the copies. Appellant objected to the admission of the medical records, contending Coenen did not provide sufficient foundation, and the trial court sustained the objection.

Anthony Konstas, a medical records custodian, also testified by telephone. He did not specifically recall copying appellant's records, although he did bring two sets of records over that morning. When told the records were in two sections, one dated March 1 and obtained for the probable cause hearing, and one dated March 6, he explained he would have copied them the mornings of March 1 and March 6. He followed his usual procedures and copied the documents page-for-page. By the time he was cross-examined, he had the opportunity to look at his subpoena. He then testified he did recall copying the records, based on the fact that he knew he was supposed to do something and did it.

Respondent again offered the records and appellant objected, based on lack of foundation. The trial court overruled the objection and received the records into evidence.

Testimony was then offered on the merits of the petition. James G. Uldrych, a mental health social worker with Hennepin County Community Services, saw appellant as a client in July and in the fall of 1989 while appellant was a resident at Willmar Regional Treatment Center. Appellant was provisionally discharged in mid-November to his own apartment. The provisional discharge ran out when his commitment expired in mid-January. Uldrych recommended that appellant make appointments at the Mental Health Center at Hennepin County for medication prescriptions.

In late January, the Mental Health Center contacted Uldrych to inform him appellant had missed an appointment. Uldrych called on appellant, and found he appeared deteriorated and fatigued, he was not as well kept and his thoughts were not as clear as previously.

On February 22, after receiving a call from appellant's sister, who lived in the same apartment building as appellant, Uldrych went to appellant's home again. He convinced appellant to go to the Hennepin County Medical Center Crisis Intervention Unit for a check up. Appellant was admitted to the hospital.

Appellant testified he had agreed to take his medication for a period of three years pursuant to his discharge from Willmar Regional Treatment Center. Haldol was prescribed, but appellant testified he does not like Haldol because of side effects which include dizziness, fainting, weak spells, being in a comatose state and moving more slowly. The trial court found appellant had not taken his medication since the prescription ran out after his release from Willmar.

Appellant testified that he had become angry at the hospital when people made racist remarks to him. When he spoke with Dr. Carl Schwartz, the court-appointed examiner, he told him he might be able to read his thought patterns. Appellant also testified he was beaten into a state of unconsciousness by the medical guards or

police, while in the hospital, and reported the attack to the FBI. However, no bruises could be seen and X-rays did not reveal broken bones.

Dr. Schwartz diagnosed appellant as being ill with chronic schizophrenia, with an acute psychotic relapse. Since appellant was admitted to the hospital, he has refused to take medication. Appellant believes Haldol downgrades his intelligence and is not treatment but persecution by others. He occasionally threatens to assault the staff.

Dr. Schwartz testified that prior to the commitment, people who knew appellant saw clinical changes, including that he was becoming more seclusive, paranoid, verbally hostile and difficult. Dr. Schwartz believed these changes occurred because appellant was not taking his medication or was not taking enough medication. In the past, he has become more assaultive when this occurred. Appellant's ideas were very psychotic and included talking about religion, the implant in his head, telepathy and persecution by the white race. Dr. Schwartz believed that without neuroleptic medication, he is easily provoked and is very close to being assaultive in the hospital. His behavior would be very provocative in an open community.

The trial court committed appellant as mentally ill. Appellant moved for a new trial, challenging the sufficiency of the foundation for the admission of the medical records and the sufficiency of the evidence to support his commitment. The trial court denied the motion. Martin appeals from the judgment and from the order denying a motion for a new trial.

## ISSUES

1. Did the trial court abuse its discretion in admitting appellant's medical records into evidence when the witness who provided foundation testified by telephone?

2. Did evidence apart from the medical records provide sufficient evidence to support commitment as mentally ill?

## ANALYSIS

1. The medical records are admissible under the business records exception to the hearsay rule. Minn.R.Evid. 803(6). There are three requirements for evidence to qualify for the business records exception:

First, that the evidence was kept in the course of a regularly conducted business activity. Second, that it was the regular practice of that business activity to make the memorandum, report, record, or data compilation. Finally, that the foundation for this evidence is shown by the custodian or other qualified witness.

*National Tea Co. v. Tyler Refrigeration Co.,* 339 N.W.2d 59, 61 (Minn.1983). It is the final factor which appellant argues was not met. The requirement of authentication or identification "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Minn.R.Evid. 901(a).

Minn.R.Civ.P. 43.01 provides that "the testimony of witnesses *shall be taken orally in open court,* unless otherwise provided by these rules." (Emphasis added.) Appellant argues that neither witness could testify that the medical records were what they were represented to be. He contends that to identify an exhibit, the witness must see it contemporaneously with his or her testimony, which is not possible if the witness is not present in court along with the records. While the motivation for authorizing the taking of testimony by telephone may have been the commendable one of expediting the hearing or avoiding the administrative burden upon the medical facilities of providing witnesses, it does not justify noncompliance with Minn.R.Civ.P. 43.01. *See Lebeck v. William A. Jarvis, Inc.,* 250 F.2d 285, 294 (3d Cir.1957) (noncompliance with Fed.R.Civ.P. 43(a)).

Evidentiary rulings on foundation are within the sound discretion of the trial court. *Jenson v. Touche Ross & Co.,* 335 N.W.2d 720, 725 (Minn.1983). In this case, the trial court's decision to admit the records based upon foundation provided by a witness who testified by telephone was

an abuse of discretion. We agree with appellant that such a witness could not provide foundation when he was not present in court to identify the records. The practice is fraught with danger and highly irregular, and we strongly discourage its use.

2. The trial court's decision to commit appellant as mentally ill will not be reversed unless its erroneous ruling was prejudicial. *See Security State Bank of Howard Lake v. Dieltz,* 408 N.W.2d 186, 191 (Minn.App.1987); Minn.R.Evid. 103(a). Appellant contends that without the medical records, there was insufficient evidence to commit him as a mentally ill person. Respondent argues that the testimony apart from the medical records provided more than sufficient evidence to support the commitment.

A mentally ill person is defined as any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which

(a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and

(b) poses a substantial likelihood of physical harm to self or others as demonstrated by:

(i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or

(ii) a recent attempt or threat to physically harm self or others.

Minn.Stat. § 253B.02, subd. 13 (1988). A trial court must find a person mentally ill by clear and convincing evidence. Minn. Stat. § 253B.09, subd. 1. The commitment must be "justified by findings based upon evidence at the hearing." Minn.R.Civ. Commitment 11.01.

Appellant does not contend that the findings, if accepted, would not support the determination that he is mentally ill under the statute. Instead, he argues that findings 7, 8, 9, 10 and 13 rely heavily upon information contained exclusively within the medical records. Without the medical records he asserts there was insufficient evidence for the trial court to conclude he was mentally ill. However, a close examination of the transcript shows that most of the findings are based upon testimony by the witnesses. We also note appellant did not make objections below to the portion of Dr. Schwartz' testimony that was based upon his review of the medical records, nor does he raise this issue on appeal. Therefore, this court need not address whether such testimony was properly given pursuant to Minn.R.Evid. 703.

Finding 7 refers to appellant's diagnosis of chronic paranoid schizophrenia, with an acute psychotic relapse, and appellant's belief as to his persecution by the white race, and his telepathic abilities, which are supported by both the testimony of Dr. Schwartz and appellant. Finding 8 refers to appellant's belief that he had been beaten during a recent hospitalization and his report to the FBI. Both appellant and Dr. Schwartz testified to these facts.

Portions of finding 9, relating to appellant's refusal to take medications when taken to the Crisis Unit because he believed the white staff has spit on the medication, his belief that they were trying to kill him and his assertion that he would kill them first, appear to be found only in the medical records. Finding 10, in which appellant indicated his paranoid delusions in the hospital that "the white supremacy goes all over" and a question of whether he is the anti-Christ, is also apparently based on the medical records. However, other examples of appellant's paranoid beliefs, including those in findings 7 and 8, are in the record.

In finding 13, the trial court found:

[Appellant] poses a substantial likelihood of causing physical harm to himself and others because in a paranoid state, he becomes threatening by yelling as he did upon admission to the hospital and using profanity which required his seclusion and causes fear in others. On March 2, 1990, his threats upset another manic patient in the hospital. His assaultiveness would present a likelihood

of a threat in the community and also hinder his socialization.

Dr. Schwartz testified that appellant occasionally threatens to assault the staff. He was admitted to the hospital because he was psychotic and people who knew him found he was becoming more seclusive and paranoid. Without neuroleptics, he continues to be easily provoked and very close to being assaultive in the hospital, and his behavior would be very provocative in the open community. Dr. Schwartz's testimony provides support for the basis of the trial court's determination that there was a substantial likelihood of harm to self or others by the threat of assaults upon others and the harm which appellant could bring upon himself if he were in an open community in his current condition.

There was clear and convincing evidence by which the trial court could make findings based upon properly-admitted evidence and conclude appellant was mentally ill pursuant to Minn.Stat. § 253B.09, subd. 1. *See In re Fusa*, 355 N.W.2d 456, 457 (Minn. App.1984). The error in admitting the medical records was not prejudicial.

### DECISION

The judgment of the trial court committing appellant as a mentally ill person is affirmed.

Affirmed.