STATE OF MINNESOTA

IN SUPREME COURT

A22-1840

Court of Appeals

Procaccini, J.
Dissenting, Moore, III, J.
Took no part, Hennesy, Gaïtas, JJ.

In the Matter of the Civil Commitment of:
Michael Benson.

Filed: October 23, 2024
Office of Appellate Courts

———————————————

Scott M. Flaherty, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota, for appellant Michael Benson.

Keith Ellison, Attorney General, Aaron Winter, Assistant Attorney General, Saint Paul, Minnesota, for respondent Commissioner of Human Services.

———————————————

S Y L L A B U S

A civilly committed person may waive the right to counsel granted in Minnesota Statutes section 253D.20 (2022), provided that the person is deemed competent to enter a knowing and intelligent waiver.

Reversed and remanded.

O P I N I O N

PROCACCINI, Justice.

The question presented in this case is whether a civilly committed person may waive the right to counsel granted in Minnesota Statutes section 253D.20 (2022). Appellant

Michael Benson was civilly committed in 1993. In 2020, he petitioned for a reduction in custody. The Special Review Board recommended that Benson's petition be denied, and he filed a petition for rehearing and reconsideration to the Commitment Appeal Panel (CAP). Before the CAP hearing, Benson filed a motion seeking to cross-examine witnesses and participate in his defense at the hearing. The CAP ordered that Benson be allowed to assist with cross-examination if his counsel, appointed under section 253D.20, was present. At the hearing, however, the CAP stated that it would allow Benson to ask limited cross-examination questions, but only after his counsel engaged in cross-examination, and it would not allow Benson to offer exhibits on his own. Benson refused to participate in the hearing under those limitations. Respondent Minnesota Commissioner of Human Services (the Commissioner) moved to dismiss Benson's petition for a reduction in custody, and the CAP granted the motion.

Benson appealed to the court of appeals, arguing that the right to counsel established in section 253D.20 is waivable. The court of appeals affirmed the CAP's decision, concluding, consistent with its precedent, that the right to counsel in section 253D.20 is not waivable. *In re Benson*, No. A22-1840, 2023 WL 3807476, at *3–4 (Minn. App. June 5, 2023). Because we conclude that the right to counsel in section 253D.20 is waivable, provided that the waiver is knowing and intelligent, we reverse the court of appeals. And because the record does not establish whether Benson's waiver of counsel was knowing and intelligent, we remand to the CAP for proceedings consistent with this opinion.

2

**FACTS**

In 1993, Benson was civilly committed to the Minnesota Sex Offender Program as a "psychopathic personality," now considered a "sexual psychopathic personality."[1] *Compare* Minn. Stat. § 526.09 (1992) (defining "psychopathic personality"), *with* Minn. Stat. § 253D.02, subd. 15 (2022) (defining "[s]exual psychopathic personality"). In April 2020, Benson petitioned for a reduction in custody, seeking either transfer, provisional discharge, or full discharge. After an administrative hearing, the Special Review Board[2] recommended that Benson's petition be denied because it determined that Benson's "level of risk, lack of clinical progress, limited internal resources, and personality dysfunction indicate an ongoing need for treatment and supervision."

---

[1]   "Sexual psychopathic personality" is defined as:

> [T]he existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions, which render the person irresponsible for personal conduct with respect to sexual matters, if the person has evidenced, by a habitual course of misconduct in sexual matters, an utter lack of power to control the person's sexual impulses and, as a result, is dangerous to other persons.

Minn. Stat. § 253D.02, subd. 15 (2022).

[2]   The Special Review Board hears and considers "all petitions for a reduction in custody or to appeal a revocation of provisional discharge." Minn. Stat. § 253B.18, subd. 4c(a) (2022). The Board has "three members experienced in the field of mental illness," including one psychiatrist (or doctoral level psychologist with forensic experience) and one attorney. *Id.*

Benson appealed this recommendation to the CAP,[3] requesting rehearing and reconsideration, and the CAP appointed counsel to represent Benson. Before the hearing, Benson filed a motion seeking an order allowing him "to [i]nquire and [a]sk [q]uestions" at the CAP hearing; in a footnote, he stated that he "prefers to proceed pro se if at all possible."[4] The CAP ordered that Benson "be allowed to assist with cross examination at the [CAP] hearing, if his counsel is also present" and that the parameters of Benson's questioning would be determined by the CAP on the day of the hearing.

At the CAP hearing, Benson appeared with his appointed counsel. The record does not include a transcript of the hearing, so it is unclear how Benson asserted his wish to represent himself at the hearing and the extent to which the CAP denied Benson's request to do so. The CAP's order, however, indicates that the CAP stated that it would allow Benson to ask limited cross-examination questions after his counsel engaged in cross-examination, but it would not allow Benson to offer exhibits on his own. Benson was unwilling to participate under those parameters and chose not to offer any exhibits or witness testimony. The Commissioner then moved to dismiss Benson's petition for failing to establish that he was entitled to a reduction in custody, and the CAP granted the motion. *See* Minn. R. Civ. P. 41.02(b).

---

[3] The Commitment Appeal Panel (CAP) is "an appeal panel composed of three judges." Minn. Stat. § 253B.19, subd. 1 (2022); *see also* Minn. Stat. § 253D.27, subd. 4 (2022).

[4] "Pro se" is a Latin term that means "[f]or oneself; on one's own behalf; without a lawyer." *Pro se*, *Black's Law Dictionary* (12th ed. 2024).

Benson appealed the CAP's decision, claiming that the CAP violated his statutory and constitutional rights to self-representation.[5] The court of appeals affirmed. *Benson*, 2023 WL 3807476, at *1. The court of appeals relied on its precedent to conclude that Minnesota Statutes section 253B.07, subdivision 2c (2022),[6] does not permit waiver of the right to counsel or confer a statutory right to self-representation in civil commitment proceedings. *Benson*, 2023 WL 3807476, at *3 (following *In re Irwin*, 529 N.W.2d 366, 371 (Minn. App. 1995)). The court of appeals also concluded that Benson forfeited his constitutional arguments regarding his right to self-representation by failing to raise them to the CAP. *Id.* at*2 n.3.

We granted Benson's petition for review.

---

[5] Benson also claimed that he received ineffective assistance of counsel at the CAP hearing. *Benson*, 2023 WL 3807476, at *1. The court of appeals concluded that Benson's claim of ineffective assistance of counsel failed because he prevented his appointed counsel from providing sufficient legal assistance at the CAP hearing. *Id.* at *3. Based on our resolution of this appeal, we need not reach this issue.

[6] Throughout its opinion, the court of appeals cited Minnesota Statutes section 253B.07, subdivision 2c, which contains nearly identical language to section 253D.20. Chapters 253B and 253D both pertain to civil commitments. Chapter 253B is the "Minnesota Commitment and Treatment Act." Minn. Stat. § 253B.01 (2022). In 2013, the Legislature moved certain provisions regarding commitments of "sexually dangerous persons" and "sexual psychopathic personalities" from chapter 253B to a newly created chapter, 253D, entitled the "Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities." Act of May 9, 2013, ch. 49, §§ 1–22, 2013 Minn. Laws 210, 210–231. Accordingly, because Benson was civilly committed as a sexual psychopathic personality, the relevant statutory provision here is section 253D.20.

# ANALYSIS

This case prompts us to determine whether a petitioner in a civil commitment proceeding is entitled to waive his right to counsel—and instead represent himself—under Minnesota Statutes section 253D.20. This is a question of statutory interpretation, which we review de novo. *City of Oronoco v. Fitzpatrick Real Est., LLC*, 883 N.W.2d 592, 595 (Minn. 2016).

"The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Gen. Mills, Inc. v. Comm'r of Revenue*, 931 N.W.2d 791, 795 (Minn. 2019); *see* Minn. Stat. § 645.16 (2022). When a statute is clear and unambiguous, we give effect to the plain meaning of the statutory text. *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 8 (Minn. 2005). But if the text of the statute is ambiguous, we "will go beyond the plain language of the statute" to determine the Legislature's intent. *Rohmiller v. Hart*, 811 N.W.2d 585, 589 (Minn. 2012). Accordingly, the first step of statutory interpretation is to determine whether the statute's language is ambiguous. *State v. McReynolds*, 973 N.W.2d 314, 318 (Minn. 2022). A statute is ambiguous "when the statutory language is subject to more than one reasonable interpretation." *State v. Fleck*, 810 N.W.2d 303, 307 (Minn. 2012).

## A.

Minnesota Statutes section 253D.20 unambiguously *guarantees* the right to counsel for committed persons in civil commitment proceedings:

> A committed person has the right to be represented by counsel at any proceeding under this chapter. The court shall appoint a qualified attorney to represent the committed person if neither the committed person nor others

provide counsel. The attorney shall be appointed at the time a petition for commitment is filed. In all proceedings under this chapter, the attorney shall:

> (1) consult with the person prior to any hearing;
> (2) be given adequate time and access to records to prepare for all hearings;
> (3) continue to represent the person throughout any proceedings under this chapter unless released as counsel by the court; and
> (4) be a vigorous advocate on behalf of the person.

Minn. Stat. § 253D.20.

The question before us is whether section 253D.20 also *prohibits* a civilly committed person from *waiving* their right to counsel. We start by determining whether the statute is ambiguous, and we do so by analyzing " 'the statute's text, structure, and punctuation' and use the canons of interpretation." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 170 (Minn. 2021) (quoting *State v. Pakhnyuk*, 926 N.W.2d 914, 921 (Minn. 2019)); *see also State v. Riggs*, 865 N.W.2d 679, 682 n.3 (Minn. 2015) (distinguishing the pre-ambiguity "canons of interpretation" from the post-ambiguity "canons of construction"). One of the canons of interpretation we employ when determining whether a statute is ambiguous is the canon against surplusage. *Hagen*, 963 N.W.2d at 170. That canon directs us to "avoid interpretations that would render a word or phrase superfluous, void, or insignificant." *State v. Thompson*, 950 N.W.2d 65, 69 (Minn. 2020).

The parties assert that the plain language of section 253D.20 supports their respective positions. We conclude, however, that the language of section 253D.20 is ambiguous because both interpretations have a reasonable basis in the statutory text. *See*

*Gen. Mills*, 931 N.W.2d at 796 (acknowledging the parties' plain-language arguments but concluding that the statutory language was ambiguous).

One reasonable interpretation—advanced by the Commissioner and favored by the dissent—is that the right to counsel in civil commitment cases established in section 253D.20 is not waivable, and civilly committed people must always be represented by an attorney throughout commitment proceedings. This interpretation is reasonable because the statute uses mandatory language to direct the court and the appointed attorney: "The court *shall* appoint a qualified attorney to represent the committed person"; "The attorney *shall* be appointed"; and "[T]he attorney *shall*" perform various duties. Minn. Stat. § 253D.20 (emphasis added); *see* Minn. Stat. § 645.44, subd. 16 (2022) (" 'Shall' is mandatory.").

In addition, the separate references to "the committed person" and "the committed person's counsel," as well as "the petitioner" and "the petitioner's counsel," throughout chapter 253D would arguably be superfluous if a petitioner could proceed without counsel in civil commitment proceedings. *See, e.g.*, Minn. Stat. § 253D.27, subd. 3(a), (b) (2022); *see Thompson*, 950 N.W.2d at 69. For these reasons, it is reasonable to interpret section 253D.20 as establishing a nonwaivable right to counsel.

Another reasonable interpretation of section 253D.20, advanced by Benson, is that the right to counsel established in the statute is waivable and the directives to the court and appointed attorney are mandatory *unless the civilly committed person waives the right*. This interpretation is reasonable because the statute does not expressly prohibit waiver, and generally, "[w]e may not add words to a statute that the Legislature has not supplied."

8

*Johnson v. Cook County*, 786 N.W.2d 291, 295 (Minn. 2010). And although we have rejected the argument "that the legislature must append language prohibiting waiver to every mandatory statute to ensure that the statute is given effect," *State v. Humes*, 581 N.W.2d 317, 319 (Minn. 1998), we have also held that when a statute protects a person's right or liberty interest, as it does here, a statute's requirements can be waived if the statute does not expressly prohibit waiver. *In re Giem*, 742 N.W.2d 422, 431 (Minn. 2007). For example, in *Giem*, we concluded that civilly committed people may waive the right to a speedy disposition of a petition provided in Minnesota Statutes section 253B.08, subdivision 1 (2006), because the statutory right "operates to protect important liberty interests of a confined patient." 742 N.W.2d at 431.

Because section 253D.20 is susceptible to more than one reasonable interpretation, the statute's language is ambiguous.

B.

When a statute is ambiguous, we turn to the relevant canons of construction to determine the Legislature's intent. *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 718 (Minn. 2014); *see* Minn. Stat. § 645.16. We conclude that the Legislature intended the right to counsel established by section 253D.20 to be waivable.

First, if the Legislature had wanted to make the right to counsel unwaivable, it could have done so explicitly—just as it has in other statutes. *See, e.g.*, Minn. Stat. § 80C.21 (2022) (prohibiting waiver of compliance with any provision of chapter 80C); Minn. Stat. § 504B.171, subd. 3 (2022) ("The parties to a lease or license of residential premises may not waive or modify the covenant imposed by this section."); Minn. Stat. § 524.5-114

9

(2022) ("A person may waive notice by a writing signed by the person or the person's attorney and filed in the proceeding. However, a respondent, person subject to guardianship, or person subject to conservatorship may not waive notice."). Because section 253D.20 is silent on waivability, the assertion that waiver is *implicitly* prohibited "works too hard" and "unduly strains the ordinary meaning of the language adopted by the Legislature." *State v. Fugalli*, 967 N.W.2d 74, 78 (Minn. 2021).

Second, our presumption that statutes are consistent with the common law supports an interpretation allowing civilly committed people to waive their right to counsel under the statute. "We do not presume that the legislature intended to abrogate or modify a rule of the common law on the subject any further than that which is expressly declared or clearly indicated." *Getz v. Peace*, 934 N.W.2d 347, 354 (Minn. 2019) (citation omitted) (internal quotation marks omitted). The right to self-representation can be traced back to before the United States' founding. *See Faretta v. California*, 422 U.S. 806, 826–30 (1975) (detailing the long history of the right to self-representation back to colonial times, noting that the right to counsel was understood to mean "a right to choose between pleading through a lawyer and representing oneself" and that it "was clearly thought to supplement the primary right of the accused to defend himself"). The better interpretation of section 253D.20, therefore, is one that does not implicitly revoke the right to self-representation existing at common law from a select group of people.

Third, an interpretation allowing waiver of the right to counsel finds further support in the constitutional-avoidance canon. That canon directs us to avoid an interpretation requiring us to confront and resolve a constitutional issue. *Giem*, 742 N.W.2d at 429.

10

Interpreting section 253D.20 to prohibit civilly committed people from representing themselves creates potential federal and state constitutional questions. If we were to hold that the right to counsel under section 253D.20 is nonwaivable, we would then need to confront Benson's arguments that prohibiting civilly committed people from self-representation violates the Fourteenth Amendment right to due process under the United States Constitution or the Unenumerated Rights Clause under the Minnesota Constitution.[7]  *See* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 16.  The constitutional-avoidance canon is even more appropriately applied here given the lack of a clear statement of legislative intent regarding whether the right to counsel was intended to be waivable. *See Giem*, 742 N.W.2d at 430 (applying the constitutional-avoidance canon "because the legislature gave no clear indication [in the statute] that it intended to divest the district court of subject matter jurisdiction").

We also note that historical amendments to the procedural rules of civil commitment are consistent with our interpretation that the right to counsel in section 253D.20 is

---

[7]  The dissent suggests that allowing individuals to waive their right to counsel may lead to similar due process issues. In *Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017), the Eighth Circuit concluded that Minnesota Statutes chapter 253D was facially constitutional, relying in part on the "extensive process" and protections afforded to persons committed under the Act.  The Eighth Circuit specifically cited the committed person's "right to be represented by counsel" under section 253D.20 as one of the many protections. *Karsjens*, 845 F.3d at 410.  But our decision leaves the right to counsel firmly intact.  And the United States Supreme Court has concluded that allowing a criminal defendant to waive the Sixth Amendment right to counsel does not violate the defendant's right to due process. *See Faretta*, 422 U.S. at 807.  Accordingly, we do not share the concern that our holding might threaten the constitutionality of chapter 253D.

waivable.[8]  Before 1999, the Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment Act of 1982 governed civil commitment proceedings.  Rule 3.01, which applied only to *initial* commitment proceedings, stated that "[t]he court shall appoint counsel for respondent immediately upon the filing of a petition, and shall assure that representation is available to respondent throughout the proceeding."  Minn. R. Civ. Commitment 3.01 (1998).  As for petitions and proceedings occurring *after* the initial commitment proceeding, Rule 3.02 applied.  Minn. R. Civ. Commitment 3.02 (1998).  Rule 3.02 mandated that the court appoint counsel *only upon request by the person committed*.[9] This language—entrusting the committed person with the decision to "request" counsel—makes sense only if the right to counsel is waivable.

Despite the textual distinction between Rules 3.01 and 3.02, a comment to Rule 3 broadly stated that "[i]t is the intention of the Rule that respondent *not be permitted to waive* the right to representation."  *Id.*, cmt.—1982 (emphasis added).  Given that Rule 3.02 required counsel only "upon request," we presume that the comment was aimed at initial commitment proceedings under Rule 3.01.

---

[8]  The procedural rules and accompanying comments discussed here are neither binding on our court nor dipositive of our decision here.  But a review of the rules and comments helps illuminate the understanding of practitioners through time.  *See Eischen Cabinet Co. v. Hildebrandt*, 683 N.W.2d 813, 818 & n.6 (Minn. 2004) (noting that consistency with the Rules of Civil Procedure, while not binding, provided additional support for our interpretation of a statute).

[9]  Minn. R. Civ. Commitment 3.02 (1998) ("Upon request by a person committed . . ., the court shall appoint counsel to represent the person in connection with the filing of, and subsequent proceedings under, a petition pursuant to Minn. Stat. § 253B.17.").

In any event, when the 1982 Rules of Civil Commitment were repealed in their entirety and replaced by the Commitment and Treatment Act Rules in 1999, the comment to Rule 3 was removed. No similar comment addressing waiver has been added to the current Commitment and Treatment Act Rule governing the appointment of counsel—Rule 9.[10] In fact, a comment to Rule 9 uses the permissive "should" in describing appointment of counsel: "The amendments regarding appointment of counsel ensure that committed individuals are continuously represented by counsel during commitment proceedings and during all times the individual is under commitment. No individual *should* be without counsel while under commitment." Minn. Spec. R. Commitment & Treatment Act 9 advisory comm. cmt.—2016 amendments (emphasis added); *see In re Jacobs*, 802 N.W.2d 748, 754 (Minn. 2011) ("[T]he use of the word 'should' indicates that the comment is not mandatory."). This more recent commentary is consistent with the proposition that, although the *provision* of counsel is plainly mandatory under section 253D.20, individuals retain the right to waive that counsel.

---

[10] Before the Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment Act of 1982 were repealed, the court of appeals relied on Rule 3.01 and the comment to Rule 3 to conclude that the right to counsel could not be waived in an initial commitment proceeding. *In re Irwin*, 529 N.W.2d at 371. After the Special Rules under the Minnesota Commitment Act were repealed and replaced in 1999, the court of appeals reconfirmed its conclusion in *Irwin*, despite the changes to the applicable rules and removal of the comment to Rule 3. *In re Emberland*, No. A11-1561, 2012 WL 612320, at *5–6 (Minn. App. Feb. 27, 2012). Here, the court of appeals applied and extended its holding in *Irwin* and *Emberland* to Benson's reduction in custody petition. But even before the Special Rules under the Minnesota Commitment Act were repealed, reduction in custody petitions were not governed by Rule 3.01—the original rule mandating counsel upon which *Irwin* was based. *Compare* Minn. R. Civ. Commitment 3.01 (1998), *with* Minn. R. Civ. Commitment 3.02 (1998).

13

The dissent contends that the mandatory nature of the language in section 253D.20 necessitates a conclusion that the right to counsel is mandatory: "The court *shall* appoint a qualified attorney to represent the committed person" and "the attorney *shall*" perform various duties. (Emphasis added.) The statutory language is undoubtedly mandatory, *see* Minn. Stat. § 645.44, subd. 16 (2022), but the mandates are directed at "the court" and "the attorney" appointed to represent the committed person. The mandates are not directed at the committed person. In other words, section 253D.20 does not require a committed person to *accept* counsel, even as it requires that the court *provide* counsel throughout the proceeding. To accept the dissent's position, we would need to first recognize a background rule that people may not represent themselves in civil proceedings, and we see no support in the record or in the law for such a rule. To the contrary, and as discussed above, the presumption of a right to self-representation can be traced to the founding of our nation. *See Faretta*, 422 U.S. at 826–30.

The dissent also asserts that chapter 253D's separate references to "the committed person" and "the committed person's counsel," as well as "the petitioner" and "the petitioner's counsel," would be superfluous if a petitioner could proceed without counsel in civil commitment proceedings. *See, e.g.*, Minn. Stat. § 253D.27, subd. 3(a), (b); *see also Hagen*, 963 N.W.2d at 170 (stating that the canon against surplusage advises us to "avoid interpretations that would render a word or phrase superfluous, void, or insignificant" (citation omitted) (internal quotation marks omitted)). But chapter 253D also refers to "the county of commitment" and "the county of financial responsibility" separately, despite it being possible for those counties to be one and the same. *See, e.g.*, Minn. Stat. § 253D.27,

subd. 3(a), (b). By the same token, the phrases "committed person" and "committed person's counsel" can also reasonably be interpreted to sometimes refer to a single person—as when a petitioner acts as their own counsel.

The dissent further argues that public policy considerations support an interpretation that civilly committed people cannot waive their right to counsel. The dissent suggests that people committed as sexual psychopathic personalities or sexually dangerous persons are inherently unable to waive counsel intelligently and voluntarily based on the statutory definitions. We cannot agree with that broad assumption. The definitions of sexual psychopathic personalities and sexually dangerous persons articulate criteria related to a person's mental health and personal conduct *with respect to sexual misconduct*. *See* Minn. Stat. § 253D.02, subds. 15, 16. Accordingly, a person may be deemed a sexual psychopathic personality or a sexually dangerous person for reasons that do not impact that person's ability to effectively waive counsel and competently represent themself in a court proceeding.

Finally, the cases from other jurisdictions cited by the Commissioner do not sway our analysis here because they turn on the specific statutory language in other states. *See In re V.H.*, 996 N.W.2d 530, 536 (Iowa 2023) (stating that the right to counsel for civilly committed people is mandatory and unwaivable under the applicable state statute); *In re Penelope W.*, 977 A.2d 380, 382 (Me. 2009) (same); *Conservatorship of Joel E.*,

15

33 Cal. Rptr.3d 704, 712 (Cal. Ct. App. 2005) (same).[11] And other states have determined that civilly committed people may waive their right to counsel under their own specific statutes. *See In re D.Y.*, 95 A.3d 157, 161 (N.J. 2014) (determining based on the statutory text and a tradition of self-representation that a party may waive representation in a civil commitment proceeding under New Jersey's Sexually Violent Predator Act); *In re Jesse M.*, 170 P.3d 683, 686 (Ariz. Ct. App. 2007) (holding that "the intended beneficiary of a statute may waive its benefit" (citation omitted) (internal quotation marks omitted)); *In re R.Z.*, 415 N.W.2d 486, 488 (N.D. 1987) (stating that North Dakota relies on criminal cases "to define the rights of respondents in mental health proceedings" and that a respondent may waive counsel if the waiver is "knowing and intelligent and voluntary").

For the above reasons, we conclude that section 253D.20 establishes a *waivable* right to counsel in civil commitment cases. We emphasize that our holding is only that section 253D.20 allows a civilly committed person to move to waive their right to counsel. We do not suggest that all civilly committed people should waive this right or that they will always be permitted to do so.

To be clear: In most cases, waiving the right to counsel is a bad idea with potentially dire consequences. *See Faretta*, 422 U.S. at 852 (Blackmun, J., dissenting) (noting the "old proverb that 'one who is his own lawyer has a fool for a client' "). But, as the Supreme Court noted in *Faretta*, there may well be "some rare instances" in which individuals

---

[11] We do not hold that the Legislature is prohibited from adopting such a rule in Minnesota. We hold only that the Legislature has not done so here. Given that holding, we have no occasion to address the constitutional issues advanced by Benson or that might otherwise arise if the Legislature were to adopt such a rule.

"might in fact present [their] case more effectively" by representing themselves. 422 U.S. at 834.

We further emphasize that the right to waive counsel is neither absolute nor unfettered. As in criminal cases, a civilly committed person must be deemed competent to enter a knowing and intelligent waiver before being allowed to waive counsel and instead self-represent.[12] *See State v. Worthy*, 583 N.W.2d 270, 275–76 (Minn. 1998); Minn. R. Crim. P. 5.04, subd. 1(3), (4) (discussing procedures for waiver of counsel in criminal proceedings). We leave to the CAP's sound discretion the determination of whether a petitioner has validly waived the right to counsel (including whether a petitioner is competent to enter such a waiver) and whether advisory counsel is necessary. *See* Minn. R. Crim. P. 5.04, subd. 2 (discussing procedures for appointment of advisory counsel); *Faretta*, 422 U.S. at 834 n.46 ("[A] State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary."). The CAP may also terminate self-representation by a civilly committed person who "deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46; *see Worthy*, 583 N.W.2d at 280 n.7. And as in the criminal context, the appellate courts may review the CAP's determination as to whether a petitioner has validly waived their right to counsel. *Worthy*,

---

[12]     We take no position on Benson's competency to waive his right to counsel.

17

583 N.W.2d at 276 (stating that we review a district court's finding that a defendant validly waived the right to counsel for clear error).

Because we hold that Minnesota Statutes section 253D.20 establishes a waivable right to counsel and therefore does not preclude civilly committed people from representing themselves in commitment proceedings, we reverse the court of appeals[13] and remand to the CAP to conduct a new hearing. If Benson is deemed competent to enter a knowing and intelligent waiver, the CAP must allow Benson to waive his right to counsel. And if Benson is allowed to waive his right to counsel but engages in serious and obstructionist misconduct, then the CAP may terminate Benson's self-representation.

The dissent notes that our resolution of this case leaves certain procedural questions unanswered. Those questions are not before us in this case, and we therefore decline to address them. But the CAP is not left without guidance. Our case law on the waiver of counsel in the criminal context is instructive. As noted above, the CAP may appoint standby counsel and may terminate self-representation when necessary. Finally, we refer the issue of waiver of counsel in civil commitment proceedings to the relevant advisory

---

[13]    As noted above, Benson argues that he has a constitutional right to self-representation under both the United States and Minnesota Constitutions. The Commissioner contends that Benson forfeited his constitutional arguments by failing to raise them at the CAP hearing. Benson asserts that his constitutional arguments are not forfeited, and—in the alternative—that his counsel was ineffective for failing to raise the constitutional arguments at the CAP hearing. Because we agree with Benson that section 253D.20 allows for self-representation, we need not decide whether Benson forfeited his constitutional arguments, whether he received ineffective assistance of counsel, or whether there is a constitutional right to self-representation in civil commitment proceedings.

committee[14] to recommend any necessary and appropriate procedural rule amendments consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we reverse the court of appeals and remand to the Commitment Appeal Panel for proceedings consistent with this opinion.

Reversed and remanded.


HENNESY and GAÏTAS, JJ., not having been members of this court at the time of submission, took no part in the consideration or decision of this case.

---

[14] The relevant advisory committee is the Minnesota Supreme Court Advisory Committee on the Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment and Treatment Act.

D I S S E N T

MOORE, III, Justice (dissenting).

Does a person, such as Benson, who is subject to civil commitment as a sexually dangerous person or a person with a sexual psychopathic personality under the Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities (the Act), Minn. Stat. § 253D (2022), have the right to waive their statutory right to counsel? The court's answer is a conflicted "yes." I disagree with that conclusion and would find the right to counsel non-waivable in civil commitment cases. Although I agree with the court that the Act unambiguously guarantees the right to counsel at all times for persons committed as sexually dangerous or having a sexual psychopathic personality, I disagree that the law is ambiguous as to whether a civilly committed person can waive this right to counsel. To the contrary, the Act unambiguously requires persons in Minn. Stat. § 253D commitment proceedings to have an attorney at all times.

I write separately because I am concerned about the practical effects of the court's decision on civil commitment proceedings under the Act, as well as possible negative implications created by the decision on the constitutionality of the entire scheme. Because the court's interpretation of the right to counsel conflicts with the presumption of continuous representation by counsel throughout the Act and how the right has been historically treated by the court of appeals in civil commitment cases, it has the potential to create confusion and disrupt the ability of district courts and the Commitment Appeal Panel to resolve these difficult cases in an expedient manner and to maintain the effective and uninterrupted treatment plan for the committed person. Rather than enhancing the

fairness or accuracy of a commitment proceeding under the Act, allowing a committed person to represent themselves risks undermining the fairness, integrity, accuracy, and finality of the proceeding and potentially jeopardizes the constitutionality of this important treatment program. For these reasons, I respectfully dissent.

A.

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022). When interpreting a statute, we first consider whether the language of the statute is ambiguous. *State v. McReynolds*, 973 N.W.2d 314, 318 (Minn. 2022). "If the Legislature's intended meaning is clear from the plain text of the statute, we follow that plain meaning." *Id.* With these principles in mind, an overview of the statutory structure of the Act is first in order before focusing on the right to counsel at issue.

Under the Act, a county attorney may petition a district court to civilly commit a sexually dangerous person (SDP)[1] or a sexual psychopathic personality (SPP).[2] Minn. Stat.

---

[1]     The Act defines "sexually dangerous person" as "a person who: (1) has engaged in a course of harmful sexual conduct . . .; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct." Minn. Stat. § 253D.02, subd. 16.

[2]     The Act defines "[s]exual psychopathic personality" as:

> The existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions, which render the person irresponsible for personal conduct with respect to sexual matters, if the person has evidenced, by a habitual course of misconduct in sexual matters, an utter lack of power to

§ 253D.07, subds. 1–2. If the district court concludes that clear and convincing evidence exists to support such a petition, the court shall order the person to be committed for an indeterminate period of time to a secure treatment facility, unless a less restrictive program (1) is available, (2) is willing to accept the person to be committed, and (3) is consistent with the person's treatment needs and the requirements of public safety. *Id.*, subds. 3–4. After such a determination, the committed person shall be transferred, provisionally discharged, or discharged only as provided by the Act. *Id.*, subd. 4.

Once a person is committed under the Act, that person may petition for a reduction in custody, which includes a transfer out of a secure treatment facility, a provisional discharge, or a discharge from commitment. Minn. Stat. § 253D.27, subds. 1(b), 2. The petition is filed with and considered by a panel of the special review board authorized by the Act. *Id.*, subd. 2. The special review board is required to hold a hearing on the petition and issue a recommendation and report to the Commitment Appeal Panel (CAP) established by the Act. *Id.*, subd. 4. The CAP receives evidence and considers de novo the recommendation of the special review board. CAP decisions may be appealed to the court of appeals. Minn. Stat. § 253D.28, subds. 1–4.

Undergirding all of these proceedings is the right of a person subject to commitment under the Act to be represented by counsel. If the person does not provide counsel themselves, the court must appoint a qualified attorney to represent the person. Minn. Stat.

---

control the person's sexual impulses and, as a result, is dangerous to other persons.

Minn. Stat. § 253D.02, subd. 15.

§ 253D.20.  But beyond that general entitlement to counsel, section 253D.20 unequivocally requires a civilly committed individual to *always* be represented by counsel during civil commitment proceedings.[3]  Minnesota Statutes section 253D.20 provides as follows:

> A committed person has the right to be represented by counsel at any proceeding under this chapter.  The court *shall* appoint a qualified attorney to represent the committed person if neither the committed person nor others provide counsel.  The attorney *shall* be appointed at the time a petition for commitment is filed.  In all proceedings under this chapter, the attorney *shall*:
>
> (1) consult with the person prior to any hearing;
> (2) be given adequate time and access to records to prepare for all hearings;
> (3) continue to represent the person throughout any proceedings under this chapter unless released as counsel by the court; and
> (4) be a vigorous advocate on behalf of the person.

(Emphasis added.)  The repeated inclusion of the term "shall" throughout section 253D.20 illustrates the mandatory nature of this right to counsel.  *Id.*  Section 253D.20 uses "shall" to refer to: (1) the initial appointment of an attorney to a civilly committed individual; (2) the timing of that appointment; and (3) the duties of this attorney.  *Id.*  In stark contrast to the statute's repeated affirmance that counsel actively participate in an individual's civil

---

[3]    I agree with the court that the statute granting a right to counsel to a respondent in an SPD or SPP case is Minn. Stat. § 253D.20, and not Minn. Stat. § 253B.07, subd. 2c (2022), which grants a respondent a right to counsel in cases governed by the Minnesota Commitment and Treatment Act.  *See* Minn. Stat. ch. 253B (governing commitment proceedings involving persons who are alleged to pose a risk of harm to self or others due to being chemically dependent, mentally ill, developmentally disabled, or mentally ill and dangerous to the public).  Over the 29 years since its decision in *In re Irwin*, 529 N.W.2d 366, 371 (Minn. App. 1995), the court of appeals has construed Minn. Stat. § 253B.07 and its predecessor statute as *not* granting a civilly committed person the statutory right to self-representation, notwithstanding intervening changes to the statute and rules.  The court of appeals relied on this history in concluding that Benson does not have a statutory right to represent himself before the CAP.  *In re Benson*, No. A22-1840, 2023 WL 3807476, at *2–3 (Minn. App. June 5, 2023).

D-4

commitment proceedings is the absence of any provision in the Act that allows for the waiver of this right to counsel.[4] When the statute is silent on a contested issue, we apply the statute's plain language "unless there is an ambiguity of expression—rather than a failure of expression." *Toyota–Lift of Minn., Inc. v. Am. Warehouse Sys., LLC*, 886 N.W.2d 208, 214 (Minn. 2016) (citation omitted) (internal quotation marks omitted). Here, there is no ambiguity in section 253D.20.

The plain language of section 253D.20 precludes a finding that the right to counsel is waivable. Section 253D.20 unequivocally requires that a committed person be represented by counsel. The statute mandates that "[t]he court shall appoint a qualified attorney to represent the committed person if neither the committed person nor others provide counsel." *See* Minn. Stat. § 253D.20. To conclude that this language permits a civilly committed individual to proceed pro se would require us to rewrite the statute by replacing the words "provide counsel" with "act as counsel." We generally, however, do not add words to an unambiguous statute. *See Staunton v. State*, 842 N.W.2d 3, 8–9 (Minn. 2014). If the Legislature had wanted to offer a pro se alternative, the language of the statute would have provided for this possibility.

---

[4]    Other state legislatures have taken a different approach and expressly authorized a respondent in a civil commitment case to waive counsel. *See, e.g.*, *In re C.S.*, 713 N.W.2d 542, 545 (N.D. 2006) ("If, after consultation with counsel, the respondent wants to waive the right to counsel or the right to any of the hearings provided for under this chapter, the respondent may do so by notifying the court in writing. The notification must clearly state the respondent's reasons for the waiver and must also be signed by counsel." (quoting N.D. Cent. Code § 25-03.1-13(3) (2006))).

The pre-ambiguity entire statute canon also cautions against reading section 253D.20 to permit self-representation. To determine whether a statute is ambiguous, we construe the law "to give effect to all its provisions." Minn. Stat. § 645.16. The entirety of the Act presumes that civilly committed individuals are represented by counsel and would be impossible to maintain or execute if counsel were optional. For example, Minn. Stat. § 253D.27, subds. 3(a), (b), require that counsel must be provided with written notice of any hearings on petitions for reduction in custody, must receive copies of any documentary evidence submitted prior to these hearings, and must be afforded a right to attend these hearings. Similarly, Minn. Stat. § 253D.29, subd. 3(c), and Minn. Stat. § 253D.30, subd. 5(c), both require that reports revoking transfers and provisional discharges must be served upon the committed person *and* the committed person's counsel. Finally, the judicial appeal proceeding in which Benson participated specifically requires counsel to participate as a party. *See* Minn. Stat. § 253D.28, subd. 2(b); *see also* Minn. Stat. § 253D.27, subd. 3 (requiring notice of hearing to be given to the committed person and the committed person's counsel). These statutory provisions would be rendered superfluous if the right to counsel was waivable.

For the above reasons, I conclude that section 253D.20 unambiguously prohibits civilly committed individuals from waiving their right to counsel during civil commitment proceedings.

The procedural rules for civil commitment provide additional support for reading section 253D.20 as providing an unwaivable right to counsel. *See* Minn. Spec. R. Commitment & Treatment Act 9. Rule 9—the current Commitment and Treatment Act

Rule governing the appointment of counsel—provides that "[i]mmediately upon the filing of a petition for commitment . . . the court shall appoint a qualified attorney to represent the respondent at public expense at any subsequent proceeding under Minn. Stat. ch. 253B or Minn. Stat. ch. 253D." *Id.* Nothing in the language of Rule 9 expressly provides a committed individual with the right to represent themselves at a commitment hearing. And to the extent that advisory comments illuminate the understanding of practitioners regarding the meaning of Rule 9, such an interpretation would contradict the purpose of that rule to expand a committed individual's right to representation beyond the initial commitment proceedings and therefore ensure that "[n]o individual should be without counsel while under commitment."[5] Minn. Spec. R. Commitment & Treatment Act 9

---

[5]  In support of the court's construction of Minn. Stat. § 253D.20, the court relies in part on the elimination of the explicit language prohibiting waiver of the right to representation included in an advisory comment to Rule 3 in the former Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment Act of 1982. Minn. R. Civ. Commitment 3.02 cmt.—1982 (1998) ("It is the intention of the Rule that respondent not be permitted to waive the right to representation."). The court's reliance on the evolution of the advisory comments is contrary to our longstanding caution that such comments "are not adopted or approved by the court. . . . It remains for this court to construe and apply the rules." *Borchert v. Maloney,* 581 N.W.2d 838, 840 n.9 (Minn. 1998). Therefore, the elimination of this committee comment to a court rule—without explanation from the court—does little to elucidate the *legislative* intent behind the right to counsel articulated in section 253D.20. Notably, no change to the statutory language regarding this right to counsel triggered the elimination of this advisory comment. *Compare* Minn. Stat. § 253B.07, subd. 2c (1998), *with* Minn. Stat. § 253B.07, subd. 2c (2000). As the court notes, this elimination was part and parcel of the replacement of the Special Rules under the Minnesota Commitment Act with the Commitment and Treatment Act Rules of 1999. Furthermore, the Commitment and Treatment Act Rules of 1999 *expanded* the previously mandated role of court-appointed counsel by requiring counsel's participation in *every* hearing conducted pursuant to Minn. Stat. ch. 253D. *Compare* Minn. R. Civ. Commitment 3.02 (1998) ("Upon request by a person committed . . ., the court shall appoint counsel to represent the person . . . ."), *with* Minn. Spec. R. Commitment &

advisory comm. cmt.—2016 amendments; *see also Should*, *Merriam Webster's Collegiate Dictionary* 1082 (10th ed. 2001) (defining "should" as "used in auxiliary function to express obligation, propriety, or expediency").

B.

Because section 253D.20 unambiguously provides civilly committed individuals with an unwaivable right to representation, and Benson offers no reasonable textual argument that the applicable statutes or rules provide him with a right to proceed pro se in this case, I need not turn to post-ambiguity canons of construction. But if the language of section 253D.20 is deemed ambiguous, extra-textual considerations nevertheless favor the Commissioner's interpretation.

If a statute is ambiguous, we "will go beyond the plain language of the statute to determine the intent of the legislature." *Rohmiller v. Hart*, 811 N.W.2d 585, 589 (Minn. 2012). To determine the Legislature's intent, we look to the relevant canons of construction. Minn. Stat. § 645.16. These canons include:

> (1) the occasion and necessity for the law;
> (2) the circumstances under which it was enacted;
> (3) the mischief to be remedied;
> (4) the object to be attained;
> (5) the former law, if any, including other laws upon the same or similar subjects;
> (6) the consequences of a particular interpretation;
> (7) the contemporaneous legislative history; and
> (8) legislative and administrative interpretations of the statute.

---

Treatment Act 9 (2024) ("[T]he court shall appoint a qualified attorney to represent the respondent at public expense at any subsequence proceeding under Minn. Stat. ch. 253B or Minn. Stat. ch. 253D.").

*Id.*

First, public policy considerations support an interpretation of section 253D.20 as constructing a mandatory right to counsel. Recognizing a right to self-representation in SDP/SPP proceedings will require a separate determination of the respondent's competency to waive counsel. Other jurisdictions have persuasively recognized this issue as creating a circularity problem inherent in allowing for self-representation in involuntary commitment proceedings. *See In re V.H.*, 996 N.W.2d 530, 541 (Iowa 2023); *In re G.G.*, 165 A.3d 1075, 1090 (Vt. 2017); *In re S.M.*, 403 P.3d 324, 330–31 (Mont. 2017). This conundrum will likewise be an issue under Minnesota's law. Respondents subject to commitment under the Act are alleged to need indefinite civil commitment due to either having a sexual psychopathic personality or being a sexually dangerous person. Minn. Stat. § 253D.07, subd. 2. To meet the criteria in those definitions, a person must either have "such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions," Minn. Stat. § 253D.02, subd. 15 (defining "[s]exual psychopathic personality"), or have "manifested a sexual, personality, or *other mental disorder or dysfunction*." *Id.*, subd. 16(2) (emphasis added) (defining "sexually dangerous person").

These statutory definitions present difficult questions regarding the ability of those respondents who suffer from a serious mental disorder or emotional instability to waive counsel intelligently and voluntarily. Although I agree with the court that the mental disorder or dysfunction at issue in these cases must prevent the individual from exercising

D-9

adequate control over their sexual impulses to justify the state's power to confine individuals in a noncriminal setting, it certainly cannot also be assumed that persons subject to commitment under the Act are not impacted by these serious mental disorders in every aspect other than sexual misconduct. *See In re Linehan,* 594 N.W.2d 867, 876–78 (Minn. 1999) (noting the district court's conclusion that non-sexual acts of aggression "showed [the committed person's] lack of control over his behavior"). The potential circularity problem created by this dilemma was described as follows by the Iowa Supreme Court:

> [T]he court would have to first determine whether the respondents in an involuntary mental health commitment proceeding are competent to represent themselves and waive their statutory right to counsel; yet the validity of that waiver, in turn, could be called into question whenever the court finds the pro se respondent is so seriously mentally impaired as to require involuntary treatment.

*V.H.*, 996 N.W.2d at 533. As a result, a civilly committed individual who waives their right to counsel and chooses to represent themselves would be in a position, based on their very status as an individual in need of commitment, "to challenge the initial waiver of counsel as not knowing, intelligent or voluntary and thereby claim[] a right to a new hearing with counsel." *G.G.*, 165 A.3d at 1090.

This circularity problem, and its potential lack of finality, threatens other governmental interests regarding the expedient resolution of cases, economic efficiency, and the maintenance of an effective and uninterrupted treatment plan for petitioners. *Id.* Notably, states have a significant interest in "assuring the fairness and accuracy of civil commitment proceedings" given the significant and prolonged deprivation of liberty that characterizes civil commitment. *V.H.*, 996 N.W.2d at 541; *see Karsjens v. Piper*, 845 F.3d

394, 407 (8th Cir. 2017). Requiring civilly committed individuals to be represented by counsel addresses the pressing concern that self-representation could erroneously prolong this deprivation. Sound public policy thus advises against allowing civilly committed individuals to waive their right to counsel at the expense of the fairness and accuracy of these proceedings.

Second, the court's interpretation of section 253D.20 as establishing a waivable right to counsel presents a series of procedural questions for the CAP which are left open by the court's decision today, and until clarified by the Legislature or the Rules Committee, the CAP's exercise of its "sound discretion" in these areas could cause unnecessary appellate review of whether one CAP's procedures were acceptable or not.[6] Must every civilly committed individual be provided notice of their right to proceed pro se? At what juncture in the civil commitment proceedings must an individual decide to waive their right to counsel and proceed pro se? By what process is the CAP allowed to determine whether a civilly committed individual has validly waived the right to counsel? Does the law

---

[6] Unless and until the Legislature acts to prohibit respondents from waiving counsel in SPP/SPD cases, I concur with the court's decision to refer the issue of waiver of counsel in civil commitment proceedings to the Minnesota Supreme Court Advisory Committee on the Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment and Treatment Act to recommend rule amendments consistent with the court's opinion to allow waiver of the right to counsel. Although the concerns I raise will undoubtedly be answered by the Committee in due course, the process of rule amendments by committee is by its nature deliberative and time-consuming. In the meantime, while we wait for those efforts, I echo the concerns noted by Justice Blackmun (regarding pro se defendants in criminal trials) that "[m]any of [these questions] . . . such as the standards of waiver and the treatment of the *pro se* [respondent], will haunt the trial of every [respondent] who elects to exercise his right to self-representation." *Faretta v. California*, 422 U.S. 806, 852 (1975) (Blackmun, J., dissenting).

D-11

applicable to criminal cases provide the CAP with the necessary authority to appoint government-funded advisory counsel to assist a respondent who waives the right counsel in a proceeding under the Act? Will advisory counsel have the right to assume full representation of the respondent if requested or if the respondent becomes disruptive during the proceedings? *See generally Faretta v. California*, 422 U.S. 806, 852 (1975) (Blackmun, J., dissenting) (raising questions that could arise from court's decision on the right to waive counsel).

The court attempts to address this host of potential practical problems in one paragraph, relying on criminal law rules and cases, and ultimately concluding that it is up to the CAP to outline the processes for determining this waiver and its relative validity. My concern is not with the ability of the CAP to do these things theoretically, but whether the court's broad directives in advance of clearly established rules satisfactorily account for the plethora of procedural problems that may well plague CAP hearings if the right to counsel housed in section 253D.20 is found waivable.[7]

---

[7] Although not precisely analogous, note the detailed requirements imposed upon district courts before permitting a defendant to waive his or her constitutional right to counsel in a criminal case. For example, the petition to proceed as pro se counsel in the Minnesota Rules of Criminal Procedure is three pages long with 18 questions (some containing sub-questions) asked to the defendant by the trial judge. *See* Form 11, Minn. R. Crim. P. If the defendant refuses to sign the waiver form to waive counsel on a felony case, the court is required to obtain on the record a knowing, voluntary, and intelligent waiver of counsel. Minn. R. Crim. P. 5.04, subd. 1(4). The appointment of advisory counsel under the Rules of Criminal Procedure requires more on-the-record advisories from the court to the defendant. *Id.*, subd. 2. Litigation over the adequacy of the waiver of counsel in criminal cases is not infrequent, and when a district court accepts an inadequate waiver, the court of appeals will reverse a subsequent conviction and remand for a new trial. *See State v. Garibaldi*, 726 N.W.2d 823, 826–31 (Minn. App. 2007) (collecting cases).

Third, the legislative history of the right to counsel in civil commitment proceedings favors an interpretation of section 253D.20 as mandating representation by counsel. *See* Minn. Stat. § 645.16 (providing that legislative history may allow the court to ascertain the Legislature's intent). The right to counsel in civil commitment proceedings originated in Minnesota's probate code. *See* Minn. Gen. Stat. § 3853 (1905). This code affirmatively required that a judge appoint a county attorney to represent those individuals facing civil commitment and to advocate on their behalf. *Id.* This history shows that, from its inception, the right to counsel was unwaivable.

In 1982, the Legislature reconsidered the mandatory nature of the right to counsel in civil commitment cases. Act of Mar. 22, 1982, ch. 581, § 3, 1982 Minn. Laws 1329, 1333 (codified as amended at Minn. Stat. § 253B.03, subd. 9 (1982)). In passing the Minnesota Commitment Act of 1982, the Legislature rejected the directory language of the earlier statute, which stated that civilly committed individuals "shall be afforded an opportunity to be represented by counsel," in favor of mandatory language that demanded the court provide counsel and that this counsel represent civilly committed individuals at their preliminary hearings. *Compare* Minn. Stat. § 253B.03, subd. 9 (1982) (stating that "the court shall provide counsel"), *and* Minn. Stat. § 253B.07, subd. 7(b) (1982) (stating that "the proposed patient shall be represented at the preliminary hearing by counsel"), *with* Minn. Stat. § 253A.07, subd. 15 (1980) ("The proposed patient shall be afforded an opportunity to be represented by counsel . . . ."). Much of this mandatory language persists today in section 253D.20. *See* Minn. Stat. § 253D.20.

The Commitment Act of 1982 provides further support for the interpretation of the right to counsel as unwaivable because it clearly contemplates that counsel and civilly committed individuals are two separate parties with unique roles and rights. *See, e.g.*, Act of Mar. 22, 1982, ch. 581, § 3, 1982 Minn. Laws 1329, 1333 (codified as amended at Minn. Stat. § 253B.08 (1982)) (providing that the court shall give a civilly committed individual notice of an upcoming hearing and that "any person may waive notice," including "[the individual's] counsel"); *id.*, subd. 3 (1982) (noting that all persons who receive notice of an upcoming hearing have a right to testify at said hearing, except for counsel). These provisions remain in the current version of the Act. *See* Minn. Stat. § 253D.07, subd. 2 (2022) (incorporating by reference these provisions found in Minn. Stat. § 253B.08, subds. 2, 3 (1982)).

In 2013, the Legislature did create a separate statutory scheme for the civil commitment and treatment of sex offenders. But I am not persuaded that this new statutory scheme creates a materially different right to counsel than that found in the civil commitment statutory model from which it emerged—Minn. Stat. ch. 253B. The right-to-counsel provisions in each statutory model are almost identical. *Compare* Minn. Stat. § 253D.20, *with* Minn. Stat. § 253B.07, subd. 2c. Furthermore, the legislative hearings dedicated to the creation of the Act emphasized the purely technical reason for separating the civil commitment statute into two statutory schemes: to ease the administration of these statutes. Hearing on H.F. 947, H. Comm. Judiciary Fin. & Pol'y, 88th Minn. Leg., Mar. 20, 2013 (audio tape) (comments of Rep. Liebling) (presenting the separation of the civil commitment statute into two statutory schemes as a "purely

D-14

technical" modification). Altogether, the legislative evolution of the right to counsel in civil commitment proceedings over the last 100 years strongly favors an interpretation of the right to counsel as unwaivable.

Finally, the court relies on the constitutional-avoidance canon and the common-law-abrogation doctrine to support its finding that the right to counsel in section 253D.20 is waivable. I remain unconvinced.

The constitutional-avoidance canon directs us to "construe a statute to avoid a constitutional confrontation" if possible. *In re Giem*, 742 N.W.2d 422, 429 (Minn. 2007). The court's focus is on the avoidance of Benson's arguments that prohibiting him from self-representation violates his rights under the federal and state constitutions. But the court's interpretation of section 253D.20, as applied to civilly committed sex offenders petitioning for a reduction in custody, could force a court to confront once again the overarching constitutional question of whether Minnesota's civil commitment program violates the due process rights of committed sex offenders who may qualify for a reduction. *Requiring* counsel at all stages of the civil commitment process is central to the constitutionality of the law. In 2015, after a "lengthy trial over six weeks," a federal district court judge issued an order declaring the Minnesota Sex Offender Program (MSOP) and its governing civil commitment statutes unconstitutional. *Karsjens v. Jesson*, 109 F. Supp. 3d 1139, 1144 (D. Minn 2015), *rev'd*, *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017). One of the federal district court's primary concerns was the process for the reduction of custody of committed persons—persons such as Benson—who claim to meet the criteria

for a reduction or those who allegedly no longer meet the criteria for commitment but nevertheless continued to be confined in the MSOP. *Id.*[8]

In *Karsjens v. Piper*, the Eighth Circuit reversed the federal district court, concluding that the Act was facially constitutional because it provided "extensive process" and "protections to persons committed under [the Act]" to petition for a reduction in custody, including release. 845 F.3d at 410. Among these processes and protections cited directly by the Eighth Circuit was the committed person's "right to be represented by counsel" under section 253D.20 and the requirement that the court "shall appoint a qualified attorney to represent the committed person if neither the committed person nor other[s] provide counsel." *Id.* at 410 (quoting Minn. Stat. § 253D.20 (2016)) (internal quotation marks omitted). The Eighth Circuit's reliance on the mandatory statutory language governing the appointment of counsel raises the question of whether a finding that a committed person's right to counsel is waivable could affect the constitutionality of the Act's entire statutory scheme. I fear that the court is not considering whether removing that particular Jenga block—the mandatory right to counsel—could eventually cause the entire tower of the Act to come tumbling down.

I also do not agree with the court's reliance on the common-law-abrogation doctrine. Citing to the right to self-representation in criminal cases guaranteed by the Sixth Amendment and recognized in *Faretta*, the court notes that the "presumption of a right to

---

[8]    "The stark reality is that there is something very wrong with this state's method of dealing with sex offenders in a program that has never fully discharged anyone committed to its detention facilities in Moose Lake and St. Peter since its inception in 1994." *Karsjens*, 109 F. Supp. 3d at 1144.

self-representation can be traced to the founding of our nation." *Supra* at 13. While I agree that the right to self-representation in criminal proceedings is based upon a "nearly universal" consensus of history and that federal–state court authority "not easily ignored," *Faretta,* 422 U.S. at 817, there is no similar longstanding or general right to self-representation in civil commitment proceedings. *See S.M.*, 403 P.3d at 329–30 (examining the history of mental health treatment before concluding that "self-representation in civil commitment proceedings has not been protected since the beginning of the Nation."). To the contrary, "[u]nlike the right to self-representation that the Sixth Amendment guarantees to criminal defendants, there is far from a nearly universal conviction that persons in involuntary civil commitment proceedings have a right to represent themselves." *Id.* at 328 (citation omitted) (internal quotation marks omitted); *see also id.* at 328–30 (collecting cases). Because there is no evidence of a common law right to self-representation in civil commitment proceedings, the common-law-abrogation doctrine is inapplicable to section 253D.20.

For the above reasons, I conclude that the better interpretation of section 253D.20, if ambiguous, is that it establishes an unwaivable right to counsel in civil commitment proceedings. This conclusion does not preclude a civilly committed person, such as Benson, from actively participating in these proceedings. Here, the CAP panel that heard Benson's case thoughtfully considered and granted Benson the very type of participation that he initially requested: an ability to inquire and ask questions during his hearing, including assisting in the cross-examination of expert witnesses. Pursuant to the requirements of section 253D.20, Benson and other civilly committed persons would be

able to petition to participate extensively, but just not exclusively in their civil commitment proceedings.

\* \* \*

To borrow from Justice Blackmun's dissent in *Faretta*, "[i]f there is any truth to the old proverb that 'one who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a [*statutory*] right on one to make a fool of himself" in civil commitment cases brought under the Act—cases which bring with them the specter of commitment for treatment for an indeterminate amount of time. 422 U.S. at 852 (Blackmun, J., dissenting). Because I conclude that Minnesota Statutes section 253D.20 establishes an unwaivable right to counsel that prohibits civilly committed individuals from proceeding pro se in those civil commitment proceedings, I would affirm the court of appeals.